## M'Lean *against* Rankin and Heyer.

THIS was an action of *assumpsit.* The declaration contained the usual counts for money had and received to the use of the plaintiff, money paid, &c. The cause was

To entitle the *United States* to a preference over other *creditors*, it must be shown that the *debtor* was insolvent and had voluntarily assigned *all* his property for the benefit of his creditors; or that an attachment has been taken out against his property, as an absconding and absent debtor, and prosecuted to effect. If an attachment is taken out, and afterwards, withdrawn, by consent of creditors, without any proceedings under it, it is inoperative, and gives no right of preference to the *United States.*

A consignment of goods by a debtor abroad, though insolvent, with directions to have them sold, and the proceeds paid to his creditors, in *New-York*, is not such an assignment of his property, as will entitle the *United States* to a preference.

ALBANY,
August, 1808.

M'Lean
v.
Rankin.

tried at the *New-York* sittings, in *December*, 1807, before Mr. Justice *Spencer*.

One *Bancker* was indebted to the *United States*, for duties on goods imported into *New-York*, to secure the payment of which, he, and the plaintiff, as his surety, executed four bonds to the *United States*. The bonds not being paid by *Bancker*, the plaintiff was sued and judgment recovered against him ; and, in satisfaction of the principal, interest, and costs, he paid 879 dollars and 11 cents.

*Bancker*, after he gave the bond, went to the *West-Indies*, on mercantile business, being then indebted to several persons in *New-York*. He remained in the *West-Indies*, and in *February*, 1806, shipped a quantity of goods to the defendants, directing them to sell the same on commission, and, after paying themselves a small debt due to them out of the proceeds, to pay over the residue to the father of *Bancker*, for the payment of his other creditors. He, at the same time, wrote to his father, informing him of the shipment, and that the property was intended for the payment of his debts in *New-York*.

The defendants received and sold the property, the proceeds of which, after deducting the debt due to the defendants, and their commissions, exceeded the debt due to the plaintiff, for the money paid at the custom-house, on account of *Bancker*.

*Bancker*, was understood by his creditors in *New-York*, to be insolvent, but the precise time when he became so did not appear.

After the property was received by the defendants, an attachment was taken out against *Bancker*, by one of his creditors, under the act giving relief against absconding and absent debtors, but the attachment was withdrawn, in consequence of an agreement made the 7th *April*, 1806, between the creditors and the defendants, that the latter should sell the property, and distribute the proceeds among the creditors of *Bancker*. The property was accordingly sold, and the proceeds are still in the hands of the defendants.

The father of *Bancker* has never claimed the property; nor did it appear that *Bancker* had consented to the arrangement between his creditors and the defendants. An objection was made, at the trial, that the evidence of these facts did not support the plaintiff's declaration, and the question being reserved by the judge, a verdict was taken for the plaintiff, for 973 dollars, subject to the opinion of the court on the question, whether the plaintiff was entitled to recover.

*Sanford*, for the plaintiff. The question is, whether the plaintiff, under the act of congress to regulate the collection of duties on imports and tonnage, is entitled to a preference to the other creditors of *Bancker*. To entitle the *United States*, and of course the plaintiff, to a preference, the debtor must be insolvent, and make a voluntary assignment of his property, or an attachment must have issued against *Bancker*, as an absent or absconding debtor.

It is stated as a fact that *Bancker* was insolvent; but the time of his insolvency is not proved. Though he did not execute a formal assignment under his hand and seal, yet it was a voluntary transfer and delivery of this property to the defendants, expressly for the benefit of all his creditors. The goods came into the hands of the defendants by consignment, and the proceeds are held by them under the directions of *Bancker*, for the benefit of his creditors, which is tantamount to an assignment.

Again, the property was attached by a regular process of attachment, taken out against absconding and absent debtors, which is one of the cases, in which the *United States* are entitled to a preference. That the attachment was afterwards withdrawn, cannot vary the right of the *United States*, which attached the moment the process issued.

*Wells*, contra. The preference given by the act of congress, is in derogation of the equal rights of creditors, and of the general policy of the law, in regard to the distribution of the estates of bankrupt and insolvent debtors; the party

who claims the preference, ought to be held to strict proof of his right. The period when *Bancker* became insolvent is not shown. It does not appear that he was insolvent when the goods were shipped, or when they came into the hands of the defendants ; and even if he were insolvent, mere insolvency does not entitle the *United States* to a preference. There must be either a voluntary assignment by the debtor, an attachment of his property as an absent or absconding debtor, for the benefit of all his creditors, or bankruptcy. The insolvent must do some act, making a disposition of his entire property, before the right of the *United States* to a preference can attach ; but there is no evidence whatever, of such an assignment.

It was a mere shipment of goods in the ordinary course of business, with directions to pay certain debts. The assignment intended by the act, is a regular assignment of all his property, by the debtor, expressly and avowedly, for the benefit of all his creditors.

It does not appear that the defendants were to pay over, or distribute the proceeds of the goods, among all the creditors, *pari passu*, nor that these creditors acquired any legal or equitable right by the act of consignment which they could enforce against the defendants.

An attachment, it is true, was issued, but it was withdrawn before any proceedings took place under it, and it must now be considered, in every legal view, as never having existed. To make out a case of attachment, in which the law of the *United States* is to operate, it should be shown that it was prosecuted to effect, and that trustees of the estate of the debtor were appointed, pursuant to the act of the legislature of this state. Until the property became vested in trustees or assignees under the act, the right of preference could not attach. The voluntary arrangement between the creditors and the defendants, without the knowledge or assent of *Bancker*, to distribute the proceeds among all the creditors, cannot vary the case.

In the case of *The United States* v. *Hooe and others*,[*] the supreme court of the *United States* decided, that the *United States* had *no lien*, in a case of a voluntary assignment, unless it was an assignment of *all* the property of the debtor.

*Baldwin*, in reply. The fact of insolvency is stated, and enough appears to authorise the inference, that *Bancker* was insolvent, at the time the goods were consigned. It is not necessary that there should be an insolvency in every case. A man may be an absconding or absent debtor, without being an insolvent. The meaning of the act of congress clearly is, that whenever the property of a debtor becomes transferred to trustees, or assignees, voluntarily, or by process of law, for the benefit of his creditors, the *United States* should have a preference over all other creditors. It is enough that the property of the debtor has passed into the hands of trustees for that purpose. The defendants acknowledge themselves as trustees, and may be made to account, in that character, to those who are beneficially interested.

SPENCER, J. delivered the opinion of the court. The plaintiff having, as surety for *Oliver Bancker*, in a bond to the *United States*, for the payment of duties, paid the same, is entitled to the same right of preference as the *United States*.

The plaintiff's claim is founded on these facts, that *Bancker* being insolvent, has made a voluntary assignment of his property, for the benefit of his creditors, to the defendants, who have received from the proceeds of the sales thereof, sufficient to pay the plaintiff his demand.

The evidence is loose as to the time of *Bancker's* insolvency, as well as respecting the fact of insolvency itself; but if it be admitted that he was insolvent at the time of the shipment of the merchandise to the defendants, there is still an insuperable difficulty to the plaintiff's recovery. It does not appear by the case, that *Bancker* has assigned his property within the purview of the act of congress.

It is stated that *Bancker*, soon after the execution of the bond to the *United States*, went to the *West-Indies*, on mercantile business, being then much indebted in *New-York*, and that in *February*, 1806, he shipped a quantity of goods to the defendants in *New-York* and directed them to sell the same on commission, to pay themselves out of the proceeds, and to pay over the residue to his father, for the payment of his other creditors.

The shipment here spoken of, was not an assignment of *Bancker's* property, but a mercantile transaction. It has

* 3 *Cranch*, 91.

been decided in the supreme court of the *United States*,* that to give the *United States* a preference under this act, the assignment must embrace all the property of the debtor; and the plaintiff can be in no better situation than the *United States*. This construction I think correct. How, then, can the plaintiff succeed, without showing the state of *Bancker's* property, and that the shipment to the defendants, constituted the whole of it?

The attachment taken out, does not bring the plaintiff's case within that part of the statute, because it was abandoned, and never reached maturity. The proceeding was in a mere inceptive state, and no rights were acquired under it.

We are of opinion, that the defendants are entitled to judgment.

Thompson, J. not having heard the argument in the cause, gave no opinion.

Judgment for the defendants.