Tilgiiman C. J.
The defendants are general assignees for the benefit of the creditors of Rhoads and Peril, under- a deed of assignment, dated 16 May, 1807. The plaintiff, having been security for Rhoads and Peril, in several custom house bonds, which he paid, claims a reimbursement out of the funds in the hands of the defendants. The plaintiff, after payment -of the bonds, stands in the place of the United States,-and is therefore entitled to a preference, unless he has done some act to deprive himself of it. The defendants in *335 sisted at the trial, on several acts, by which the plaintiff lost his preference, but principally on this — that Rhoads and' Ferit, after being notoriously insolvent, and having ceased to do business, made an assignment to the plaintiff, compre* bending almost every article -of their partnership property, for the purpose of enabling him to pay the custom house bonds, and also a debt due to him on his private account, fox-notes which he had endorsed for them. This assignment is dated 15th April, 1807, (31 days before the assignment to the defendants.) I told the jury that, in case they should be of opinion “ that Rhoads and Ferit made the assignment to the “ plaintiff after they were clearly insolvent, and had ceased u to do business, with a view of assigning their whole estate, s‘ first in part, to the plaintiff, and afterwards the residue to u the defendants, and did afterwards make assignments accordingly, the two assignments would be considered in law “ as one transaction, so. far as regarded the right of preference of the United States, and consequently the United “ States might x-esort to either fund for satisfaction of the custom house bonds.” — By the act of congress, 2 March, 1799, Sect. 65, (4 L. U. S. 386.) “ In all cases of insolvency, the “ debt due to the United States, shall be first satisfied,” — and it is afterwards said, in the. latter part of the same section, that “ the cases of insolvency mentioned in this section, shall “ be deemed to extend, as well to cases in which a debtor “ not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof, for tHe “ benefit of his creditors, or in which the estate and effects of “ an absconding, concealed or absent debtor shall have been “ attached by process of law, as to cases in which an act of le- “ gal bankruptcy shall have been committed.” Now here has been a voluntary assignment of the whole estate, for the benefit of creditors, and the only objection is, that it was not done at one time. The argument is, that the assignment to the plaintiff was but of part of the estate,-and therefore not a case in which the United States had a preference. But the law is not to be evaded by an artifice of this kind. It was intended to secure the debt of the United States, in all cases where the debtor was insolvent, and made a voluntary assignment of all his pi-operty. Now what is the difference between an assignment of the whole to one person by one deed, and to several persons by several deeds. In both cases, .the *336 whale is assigned, and the debt of the United States will be ” lost in part, unless their preference is preserved as to the whole. The counsel for the plaintiff concede, that assignments of the whole to' several persons, by several deeds at. the same time, would bé within the law, and I can perceive no substantial distinction between that and the case before us, where, when the first assignment was made, it was in contemplation to assign the whole residue, which was done in thirty-one days afterwards. It has been objected, that it ought to have been left to the jury to determine whether there was an intent to defraud the United States by the assignment ,to the plaintiff. But this would have been going counter to the usual course. In all questions on the statutes of Elizabeth, against defrauding creditors, and questions on the bankrupt laws, the facts being ascertained, the Court has decided the law. This is so well established that juries have submitted the facts in special verdicts, and counsel have done the same in cases stated. Hitherto I have considered the act of congress on its own expressions, without reference to any decisions which may have fixed its construction. I will now attend to the cases which have been cited. The first is the United States v. King, decided in the Circuit Court of {he United Stales, at May term, 1801. As the principle there’ established has been recognised in all subsequent cases, I have examined my notes, which are more full than ’ Mr. Wallace’s report of the case. The house of Johnson and King made a partial assignment to James King, (father of the partner,) on the 15th May, 1799. The house’was embarrassed at that time, and had been for some months preceding, but had hot stopped. On the 15th May, 1799, the creditors gave a letter of license to Johnson, by which he was allowed'twelve months for payment of half of the debts, and eighteen months for the residue. His partner, King, they discharged. When the letter of license was given, it was expected that all the debts would be paid. No general voluntary assignment was ever made, but the debtors, after-wards became bankrupts, and on the trial it was disputed Whether at the time of the assignment to James King, the house was actually insolvent or not. The charge of the Court was delivered by me as follows. “ The Court are unani- “ mously of opinion that this is not such an insolvency as the “ act of congress contemplates. It must be a notorious, fla- *337 • « grant insolvency, testified by a resort to. an insolvent .law, “ bankruptcy, or an assignment of property. It need not be- “ an assignment of the whole property to one set of trustees “ for the benefit of creditors: an assignment of all to,one ere-i. . . , , . r i r i w ditor to pay ins own debt, or an assignment ot the tvhole to “ a variety of creditors, would be within the act, for one shall “ not accomplish an object by indirect means or artifice, “ which the law prohibits to be done directly. But it would “ be of dangerous tendency to construe the law so as to avoid “ all transfers of property made by. a man in tott.ering or em- “ barr.assed circumstances, because years after the transac- “ tion took place, it should turn out that at the time of the “transfers, he was unable to pay all his debts.” It is evident,. at the first glance, how widely this case differs from the one before us, but the opinion of the Court is very much in point. Whether the assignment be .to .one or to. several it matters not.. The law cannot be evaded by contriyance. The next case is the United States v. Hooe et al. decided. by the Circuit Court of the United States, February term, 1805. (3 Crcmch, 73.) In that case there was a partial assignment, and no general assignmentj and that was the turning point of the cause. Chief Justice" Marshall declared it to be the Court’s opinion, that to bring the case within the act of congress “ there must be an assignment of. the debtor’s whole “ property, (unless a small part should fie left out for the pur- “ pose of evading the law,) that there, must be such a general divestment of property as amounted to. insolvency in its “ technical sense.” In the case of' FFLean y,. Rankin et al. 3 Johns. 369, decided in 1808, there was also a partial, but no general assignment, and the case of the United States y. Hooe et al. was cited and relied on by the Court. .The result of these cases is, that to give.the United States a preference, there must.be an assignment of.the debtor’s xvhole ..property, which, in the present case, there has,been.. The only objection which can be made is, that there was a mpn'th’s interval between the two assignments, .but that can be of no importance, ps the jury have found that ..the second was in contemplation when the first was made.
. But, supposing the assignment to the plaintiff to fall within the act of congress, another question arises. As the plain-, tiff has paid the xvhole debt to the. United States, , is he not entitled to contribution from the fund, in the hands of.the.de *338 fendants ? This point was not made on the trial, but supposing that it might avail the plaintiff, I told his counsel that if, upon reflection, they thought it tenable, they might move it in bank, in case the verdict went against them. I think it clearly a case of contribution; The only ground on which the assignment to the plaintiff can be brought within the act of congress, is by connecting it. with the assignment to the defendants, so that the two assignments form one fund for payment of the debt to the United States. That being the case, the plaintiff, who has paid'the -whole, is entitled to recover from the defendants their proportional part. There were several minor points made by the counsel for the defendants, to understand which, it is necessary to mention, that the assignment to the plaintiff consisted of the surplus of a great mass of property conveyed by Rhoads and Per it, at different times, to Guest and Bancker. The claims of Guest and Bancker being satisfied, the plaintiff was to have the residue. First, The defendants contended that the plaintiff ought to have applied the funds assigned to him in the first place, to the discharge of the custom house bonds ; but as the assignment contains no such provision, there was no obligation to make such application, especially as the private debt due to the .plaintiff is mentioned in the deed of assignment, before that due to the United States. I make no doubt but that both.parties thought there was property enough assigned to pay , both debts, but it turned out otherwise. There is no reason, however, why the plaintiff should be barred of his advantage of standing in the place of the United States, having never agreed to give it up. Second, It is said that the plaintiffs should be responsible for not making insurance on a cargo shipped from Pruxillo to the Havanna. This was very much a matter of fact, and was left to the jury accordingly; as was also the third point, viz. that in settling the account of Guest and Bancker, the plaintiff allowed an improper charge of commissions. The fourth and last point was, that by the terms of the assignment to the plaintiff he consented that Rhoads and Per it should receive -§3,000 for their own use, out of the funds in the hands of Guest and Bancker, before he himself should receive any benefit from them. It should be noticed that, prior to the assignment to the plaintiff, Rhoads and Rerit had given the plaintiff an order on Guest and Bancker, for §16,300, payable out of the funds in their hands, which order the plaintiff re *339 linquished on receiving the assignment. In support of this objection the defendants’ counsel relied on the case of M'Alister v. Marshall. 6 Binn. 338. But that case is quite different from the present. In M'Alister v. Marshall, it was attempted by ifhe debtor and his assignees to withdraw part of his estate from those creditors who would not accept of the assigriment, arid' vest it in trustees for the benefit of the wife rind children of the debtor.- That was held to be illegal. But here the ¿3,000 to be received by the debtors might have been applied by them to the payirient- of other debts, or to the purchase of property which would have been liable to the executions of their creditors. It amounted to no more than an assignment of the whole property of the debtors in the hands óí'Guést and Bancker, except ¿3,000. It is to be recollected thrit this' property was Supposed by all parties, to be much more than the amount of the relinquished order, (¿16,300,) and therefore the plaintiff thought he was making an advantageous bargain in giving up the order, and receiving the assignment. At thrit time, Rhoct'ds arid Per it had sanguine expectations of payin'g all their debts, and there is no ground of suspecting an intention to defraud any of the creditors. Indeed from the evidence it appeared probable, that if the Truxillo adventure had not been unfortunately left uninsured, there would have been a surplus after paying all.' Upon the whole then, as there was a verdict for the defendants, and the plaintiff was entitled to recover part of his demand on the principle of contribution, I am of opinion that there should be a new trial, unless the parties will themselves adjust the amount of the contribution which I should suppose might be done without difficulty.
Yeates J.
It is admitted on all hands that the assignment of Rhoads and Peril of the 20th August, 1806, to Guest and Bancker, gave no preference to the United States, because it was a bona jide transfer when there was no notorious insolvency of the parties who made it, and it was intended thereby that monies should be advanced to them from time to time, by means whereof they were in fact enabled to proceed in their mercantile pursuits, and conduct their business as formerly. It is perfectly clear, under the 65th section of the act of congress of 2d March, 1799, that the assignment to the defendants of 16th May, 1807, gave such preference to the *340 United States; because the instrument on the face of it dedared, that the assignors were unable to pay their just debts, and they thereby assigned all their real and personal estate, except their household furniture and wearing apparel, for the-benefit of their creditors.
The question now agitated turns on the legal effect of the assignment made' to the plaintiff' on the 15th April, 1807,-which preceded the last assignment only thirty-one days. Now it is not denied by the plaintiff’s counsel, that if Rhoads and Perit had made two or more assignments, on the same day to different persons, the first of only a part of their property, but the last of the entire residue, that these acts would give priority of payment to the general government, inasmuch as the law could not be evaded by so flimsy a contrivance. What solid substantial distinction can be shewn between the case last put and the present, wherein the second assignment followed the heels of the first, when Rhoads and Perit were clearly insolvent at the period of its execution, and when at the very moment they intended to make a further assignment of the residue of all their estate for the benefit of their creditors, which intention was carried into execution shortly afterwards ? In this manner the facts were submitted to the jury, and their verdict has established them. It was shewn in avidence, that- the firm of Rhoads and Perit stopped payment in September or early in October, 1806, and were notoriously insolvent on the 15th April, 1807, when they assigned the bulk of their personal property to the plaintiff. The professed object of the act of congress under consideration was to give preference of payment to the United States in cases of insolvency, and the national councils have thought it a measure of sound policy, that individual interests should give way to those of the public at large.
The counsel of the plaintiff have much relied on the expressions of Marshall, C. J. in the United States v. Hooe et al. 3 Cranch, 91. wherein he says the word “property,” in the 65th section of the act, is unquestionably all the property which the debtor possesses, and the word “ thereof” refers to the word “ property,” as used, and can duly be satisfied by an assignment of all the property of the' debtor. He explains his meaning in the succeeding sentence, wherein-he asserts, that if a trivial portion of an estate should be left out for the purpose of evading the act, it would be considered as *341 a fraud upon the law, and the parties would not be enabled to avail themselves of such a contrivance. It is true, the household furniture and wearing apparel of the two partners were not comprehended in either of the assignments ; but compared with what was assigned, I think the epithet trivial may fairly be ascribed to any articles not enumerated in'those instruments. I go further, and adopt the language of one of the defendant’s counsel, that no assignment can with legal propriety be deemed partial, when, in the very instant of execution, a general assignment is contemplated and intended, -and that intention is shortly afterwards consummated. If such finesse could be practised with success, nothing 'would be more easy than thus to elude the provisions of the act, and defeat the manifest intention of the legislature. I therefore consider these two assignments as parts of a premeditated plan, and view them as one entire transáction so far as they respect the insolvency, of Rhoads and Perit, and the preference of the United States founded thereon. United together they operate as a general divestment of their whole estate, and were intended to produce this effect. In my view of the subject the proper facts were submitted.to the. jury. We are often told in our books that fraud is a mixed proposition of law and fact, but it is-the office of the Judge peculiarly to decide, whether certain acts or omissions disclosed in evidence on a trial do not constitute a legal fraud, when fairly propounded to the jurors and proved to their entire satisfaction. If this position be not correct, the law can no longer be considered as a science: The crude varying opinions of jurors in every cause must in such case constitute the criterion of legal truths!
The question- of contribution which was first suggested by the Chief Justice in the trial, and was left to be decided by the whole Court, remains to be considered. If the two last assignments are to be considered as one transaction, and the effect of the law could not be evaded, the United States might recur to the funds arising from both intruments for the payment of the custom-house bonds due to them: And by the express words of the 65th section of the law, “ if the “ surety has paid to the United States the money due upon “such bonds, he shall have and enjoy the like advantage, “ priority, or preference for the recovery and receipt of the “said monies out of the estate or.effects of such insolvent *342 “ principal as are reserved and secured to the United Statesp The lands which passed by the last assignment were bound by the judgment obtained by the United States against Rhoads and Perit, independently even of the preference claimed under the act of congress. The plaintiff, as assignee and' surety, has paid these bonds as he was Épund to do in the first instance, by the provisions of the s^me section. He has thus relieved the real estate, the property of the partners in their individual capacity, which was equally subjected to the payment of their debts, as the funds in his own hands. His private interests fell a sacrifice to the discharge of a common burden, which, in point of equity and justice, ought to have been borne by all. Hence arises the true principle of contri* bution as laid down in the different cases cited by the plaintiff’s counsel, which is fully exemplified in the case of general average by the mercantile law, where goods have been thrown overboard in a storm to secure the general safety. The plaintiff in his character of surety in custom house bonds founds his right of contribution on the act of congress. His claim its assignee, he derives from the voluntary deed of the house for whom he became surety, which was intended to be, and was so expressed, “ for the purpose of paying certain debts “ due to him, and also certain custom house bonds in which “he had become surety for Rhoads and PeritP This union of character, as assignee and also as surety,'so far from impairing his claim of contribution, in my idea strengthens it greatly. I am, therefore, clearly of opinion, that the plaintiff is entitled to contribution out of the funds assigned to the defendants for the benefit of the general creditors. Should he hereby obtain advantages superior to the other creditors, it will be recollected, that he grounds his claim on the voluntary act of the debtors, who, independently of a bankrupt system, might give such preferences as they thought proper, subject nevertheless to the priority of the United States.
As to the minor points, as they have been called during the course of this argument, which have been urged by the defendants’ counsel, I forbear going into a detailed consideration of them. I shall content myself with generally observing, that where facts were controverted therein, they were fairly submitted to the jury; and where,the law-arose out of those facts, the opinion of the Chief Justice was delivered in a manner satisfactory to my judgment. Should I. take u'p *343 those different grounds of objection to a verdict for the plain-jiff, and deliver my sentiments on them minutely, they would be found to correspond with the charge and the opinion he has just expressed. Upon the whole then, I see no reason for granting a new trial, except on the single ground of contribution, which was not gone into before, but reserved for the consideration of this Court. That matter may readily be settled by an accountant, if the parties are desirous of a speedy termination of the controversy without further delay apd expense. The rule of proportion to be pursued in the calculation is this: — As the aggregate of the nett proceeds arising on both assignments, is to the sum paid by the plaintiff on the custom house bonds, so is the amount of the proceeds on the last assignment, to the sum for which the defendants are liable by way of contribution. By adjusting the sum in this mode, I think the law and justice of this case will be correctly administered.
Gibson J.
If, to evade the act of congress, a portion of the debtor’s property be left out of the assignment, it will undoubtedly be considered fraudulent, and taken as a general one, so far as to give the United States a preference. This construction goes beyond the letter of the act of congress ; but it is one that is absolutely necessary to prevent the debtor from withdrawing his property by piecemeal beyond the reach of government, and by this means evading the law altogether. Where, however, the assignment is to a surety, I can see no necessity for carrying the construction beyond the letter; for the property being as much subject to the claim of the' United States in the hands of the assignee, as it was in the hands of the assignor, no fraudulent purpose can be effected by the transaction. The right of the United States to preference is not in the nature óf a lien, and does not relate to the commencement of the indebtedness, but' arises on the execution of the fraudulent assignment. If the assignment to the plaintiff was bona Jide it was not within the act, and by its execution, therefore, I am of opinion he incurred no new responsibility to the United States, but that government could look to him only as a surety in the custom house bonds. But take it he also became liable as an assignee, and what is the result ? His character of surety did not merge in that of assignee. Cum duo jara in una persona concur runt, tequian estae *344 se essenf in diversis. The plaintiff'united in his own person* ~ beside that of a creditor, the separate characters of surety and. assignee,-and I grant, for the sake of the argument, that in each of the two last.he was equally liable to the United States. ,Now it is said, the act of congress expressly directs the assignee to pay the United States first, and hence it is inferred, the plaintiff must have paid government in the character of an assignee, and not as a surety, and of course-that he cfinnot 'now be invested with the rights and privileges of the latter. But what was to prevent Downing, the surety, from interposing, and by paying off the United States, relieving, entirely, the fund in the hands of Downing, the assignee. Provided government got its money it was immaterial from what, hand it was received; and the person paying was entitled to assume any character in which he might legally perform the act. Now the evidence is clear, that government was, in fact, paid by the plaintiff in the character of a surety. This is an important part of the case, for if the payment had been actually made with the funds assigned, it would have been the payment of Rhoads and Perit, and not of the plaintiff, whether he were liable as an assignee pr not. But the bonds were paid by the plaintiff, partly with his own notes, received as cash, and partly with debentures which he purchased from M'-Euen, Hale and Davidson. Whether they had a right to sell those debentures, does not.enter into the question; for while they remained unredeemed, neither the defendants nor Rhoads and Perit, who pledged them, could contest the validity of the sale. The payment was not made out of the proceeds of the property assigned, for that remained unproductive until afterwards. It therefore cannot be said that any part of the bonds was paid by Rhoads and Perit, or with their funds. But it is said that, although the plaintiff may have paid the bonds in the character of a surety, yet, - when he came to make the application of the funds in his hands as an assignee, he was hound., (being put by the express provisions of the act,.in the stead of the United States,) to pay that part of. his demand which was due him as a surety,, ira the first place.: In this, according to my view of the subject, lies the whole fallacy of the argument. The 'act of the 2d March, 1799, sec. 65, after enacting that the United States shall have a preference where a bond is given for duties, provides that if the principal ip *345 such bond shall be insolvent, or die without leaving sufficient to pay his debts, and any surety in such bond shall pay the money due, such surety “ shall have and enjoy the like advan- “ tage, priority or preference, for the recovery and receipt of “ said monies out of the estate and effects of such insolvent or “ deceased principal, as are reserved or secured to the United “ States.” What was the intent of this section but to give an advantage or privilege which the surety would not otherwise have had ? If so, he is not bound to use it, but may wave it, and if he thinks proper, insist on being paid last, or not at all. Sfuilibet renunciare potest beneficio juris pro sese introducto. Even the United States, with respect to whom the law is positive, that they shall be paid first, may, I apprehend, wáve their priority. All that congress meant, was to prevent, in case of deficiency, a loss from falling on the public, without caring about preference between the other creditors ; except that to induce the surety to discharge his obligation with promptitude, it was thought expedient, on his doing so, to invest him with the prerogative which government enjoyed before. But as the public have no further concern in the matter, it could not have been the intent to compel the surety to use his privilege when it would operate to his prejudice. The design was to put a weapon into his hand to be used in a contest with others, but never to compel him to turn it on himself. But it is said, the plaintiff, representing the United States, could not wave his preference without infringing on the^rights of others, for that the assignment to him, and that to the defendants, are to be considered as but one transaction, as far as regards the claim of the United States. This is an important consideration; for, I admit, if the two funds are to be considered but as- one, with regard to liability to the plaintiff’s claim as a surety, that he could not postpone that claim on the part in his own hands, for the purpose of letting in his private claim on it, and then obtain a preference for his claim as surety on the part in the defendant’s hands, and by this means give both his claims a preference. For as his private claim would have to contribute its proportion to what was a general charge on both funds, it would, in the end, come to the same thing as if the plaintiff had first satisfied his claim as surety. But the proposition will not bear examination. I consider the defendants and the creditors thev represent as standing exactly in the place of *346 Rhoads and Perit, under whose deed of assignment they ‘ claim. Before the date of-that deed the plaintiff had paid the United States, and succeeded to their character and rights. Then, granting the assignment to the plaintiff was originally a general one, within the act .of congress, still, however, it was so, as it respected the United States only. But when they were paid, it ceased to have that character, as to them. By whom then was >it to be .considered in that point qf view ? Not by Rhoads and Perit, who were a party to it, and estopped from asserting that it was different from what, on its face, it purported to be. The plaintiff, uniting in his own person the character and rights of every party that had an interest in the fund, might dispense with a law made for the exclusive benefit of the United States, or those representing them; especially as there was then no other fund or class of creditors that could be affected by his doing so. This being the case, neither Rhoads and Perit, nor any one else, could object. Thus stood matters at the time of the assignment to the defendants. What fights then did they acquire, which Rhoads and Perit had not. There is no analogy between them and purchasers without notice. They acquired no right with regard to the fund assigned to the plaintiff, but the interest Rhoads and Peril would have had in the surplus, if there had been any after paying the plaintiff’s whole demand. But that fund, instead of yielding a surplus fell short. I know not, then, how the defendants can be permitted to treat the two assignments as parts of the same transaction, making together, by relation of time, but one conveyance of th¿ debtor’s whole property, when the trust contained in the first assignment was fairly executed before the second took place.
If the plaintiff had elected to consider the assignment to him as a general one, and paid himself as a surety, the two funds would then have been considered as one for the purpose of contribution, but as he has not done so, there is no affinity between them. If then the act of congress is disposed of, there is nothing in any rule of law that will restrain the application of the ftmd in the plaintiff’s hands to that part of his demand that arose from payment of the bonds. The rule is, that the party paying may direct the application, but if he neglects to do so, the party receiving may. Where however no appropriation is in fact made by either, the law applies the payment in the manner most advantageous to the party pay *347 ing, but if his interest will not be affected either way, then in the way most advantageous to the party receiving. Here" there was no actual appropriation by either party, the direction in the deed of assignment being a general one, to pay the bonds and the debt which the assignors owed the plaintiff, without preference to either. Now as between Rhoads and Perit and the plaintiff, it was immaterial how the payment was applied; for as against them the plaintiff had no lien, for the claim due him in the right of the United States, and to have discharged it would have left them exposed on the other hand, to a demand of as high a nature. But it was very material to the plaintiff to have the payment appropriated to the claim due to him in his own right; because, as between him and their creditors, it gave him a decisive advantage. The interest of Rhoads and Perit, if any had existed, to have the appropriation in a particular way, was personal, and did not pass to the defendants under their assignment. The case therefore, as between the plaintiff and Rhoads and Perit might be different from what it is between the creditors of the latter, who all stand in the same relation to them. The result is, that the plaintiff ought to be considered as having applied the fund to the payment of the debt directly due him, and not to the repayment of the money advanced on the bonds ; and that he is entitled to come on the fund in the defendants’ hands, not for a contribution, but as a surety having a priority. For these reasons, I'think a new trial ought to be granted. As io the other points in the cause it is only necessary to say, I fully concur in the sentiments expressed by the rest of the Court.
A new trial awarded.