## Case No. 16,695.

UNITED STATES v. WILKINSON et al.

[5 Dill. 275.] [1]

Circuit Court, W. D. Missouri. 1878.

ATTACHMENTS—REV. ST. §§ 3466, 3467, CONSTRUED—PRIORITY OF THE UNITED STATES AS A CREDITOR.

1. Under the legislation of congress (Rev. St. §§ 3466, 3467), the priority of the United States as a creditor is secured only when by law or the act of the debtor his property is attached, sequestered, or being administered for the benefit of his creditors generally.

[Cited in brief in Jackson v. Davis, 4 Mackey, 198.]

2. The attachment mentioned in the foregoing section is not such an attachment as is authorized by the laws of Missouri, which is for the exclusive benefit of the creditor who makes the attachment.

This is a bill filed by the United States against Charles B. Wilkinson and the Bank of St. Joseph, alleging that said Wilkinson, from the year 1872 to 1875, was internal revenue collector for the Sixth collection district of Missouri; that as such collector he became indebted to the United States in the sum of $8,357.31; that the United States, on the 30th of March, 1876, recovered judgment for said amount, which judgment remains unsatisfied; that in September, 1875, said Wilkinson was the owner of a large amount of property (described in the bill); that about the date last aforesaid he fled the country; that the Bank of St. Joseph instituted suit by attachment in the state court, attaching all the property of said Wilkinson and garnishing his debtors; that, under the judgment obtained, said Bank of St. Joseph sold all of the property attached and became the purchaser thereof. The prayer of the bill is to declare the bank trustee and direct it to pay over the funds in order to satisfy the debt of the United States. The bill is demurred to.

Botsford & Williams and Mr. Waters, for the United States.

Willard P. Hall and Franklin Porter, for the defendant.

KREKEL, District Judge. The legal question raised may be considered under the first cause assigned in the demurrer, "that the bill does not state a cause of action against the defendant bank."

The right of recovery on part of the United States is based upon section 3466 of the Revised Statutes of the United States, which is as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts due from the deceased, the debts due the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor not having sufficient property to pay all his debts makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." See, also, Rev. St. § 3467.

It would appear that the priority provided for applies and extends to cases only in which the estate of the debtor passes from him or is administered for the benefit of his creditors. Burrill, Assignm. p. 534, and cases cited. An insolvent estate is so administered. The administrator or executor deals with the assets of the estate for the benefit of creditors in the first instance. An assignment made voluntarily brings the property to be administered into the same category. Thus far there is no difficulty in ascertaining the meaning and intent of the law securing the preference. The clause affecting the estate and effects of an absconding debtor when attached by process of law, presents the real difficulty.

We have two classes of attachment in the United States; in the one the effect is to vest the property of the debtor in trustees for the benefit of all the debtor's creditors; in the other class (as in Missouri) the attachment is for the exclusive benefit of the attaching creditor.

In New York, New Jersey, Delaware, and Pennsylvania, the property of absconding and concealed debtors, when attached, passes into the hands of trustees, to be administered for the benefit of the whole of the creditors. The provision of the United States statutes uses the words "absconding, concealed, and absent debtor," and it is a reasonable construction to say the attachments spoken of refer to the class of attachments in the states named. This has been so held. 1 Kent, Comm. 247 (side page), and notes; U. S. v. Clark [Case No. 14,807]; Smith v. Tinker, 2 Day, 241; M'Lean v. Rankin, 3 Johns. 369; U. S. v. Crookshank, 1 Edw. Ch. 233; Johnson v. Hunt, 23 Wend. 87, 89; Plunkett v. Moore, 4 Har. (Del.) 380; Cummins v. Blair, 18 N. J. Law, 152; Bouchaud v. Dias, 1 N. Y. 204; Burrill, Assignm. 534; Field v. U. S., 9 Pet. [34 U. S.] 201; U. S. v. Fisher, 2 Cranch [6 U. S.] 390, note; U. S. v. Mott [Case No. 15,826]; U. S. v. Hooe, 3 Cranch [7 U. S.] 87; Conrad v. Insurance Co., 1 Pet. [26 U. S.] 439, 440; Watkins v. Otis, 2 Pick. 101, 102; Drake, Attachm. §§ 644, 668, 673.

The effect of an attachment in Missouri is to secure to the attaching creditor a conditional lien, which may be perfected by a judgment, and affects the property attached only, and does not affect the interest of any other than the attaching creditor in any way. The fact that the St. Joseph Bank attached all the property of Wilkinson—the defaulter—cannot alter the case or change the effect of the law. The attaching bank, under the laws of Missouri, was the only party interested, both as a creditor and as regards the property attached.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

The next section of the Revised Statutes after the one quoted supports this view. That section provides that "every executor, administrator, or assignee, or other person who pays any debt due by the person or estate for whom or for which he acts, before he satisfies and pays the debts due the United States" [Rev. St. § 3467], shall become personally answerable in his own person and estate for the debts due to the United States. The class of persons here referred to is evidently a class acting as trustees in some capacity, and not for themselves. Reading this provision thus, it harmonizes with the construction given to the attachment referred to in section 3466.

In considering the question at issue, it may not be improper to ask: Does the priority secured to the United States so impress itself upon the property as to create a lien, subject to which the Bank of St. Joseph acquired the property of the defaulting debtor, Wilkinson? If it did, then every person dealing with one who is or may become indebted to the United States does so at his peril. All property of a debtor of the United States would be affected by possible liens, the existence and extent of which no one could well ascertain. The question of such implied lien in favor of the United States has been considered by commentators and courts. Chancellor Kent (1 Commentaries, side page 245, citing U. S. v. Hooe [3 Cranch, 72]), says that it was there held "that the priority to which the United States were entitled did not partake of the character of a lien on property of the public debtor. The United States, in the character of a creditor, have no lien on the real estate of their debtor. If the priority existed from the time the debt was contracted, and the debtor should continue to transact business with the world, the inconvenience would be immense. The priority only applied to cases where the debtor had become actually and notoriously insolvent, and, being unable to pay his debts, has made a voluntary assignment of all his property, or, having absconded or absented himself, his property had been attached by process of law.". In the case of Prince v. Bartlett, 8 Cranch [12 U. S.] 431, it was decided "that the effects of an insolvent debtor duly attached in June were considered not liable to the claim of the United States on a custom-house bond given prior to the attachment and put in suit in August following. The private debtor had acquired a lien by his attachment which could not be divested by process on part of the United States subsequently issued. Beaston v. Farmers' Bank, 12 Pet. [37 U. S.] 102.

Under the views expressed, no lien in favor of the United States on account of preference existed at the time the sheriff of Buchanan county seized the property afterwards sold under execution on judgment in favor of the bank obtained in the attachment suit. The property being free of liens. the bank buying it thereby incurred no liability to the United

States, and holds the property free of any claim of the United States.

The judgment of the court is that the demurrer be sustained and the bill dismissed. Decree accordingly.

NOTE. In U. S. v. Cook Co. Bank [Case No. 14,853], Mr. Justice Harlan (circuit court for Northern district of Illinois, 1879), construing the legislation of congress applicable to the question (Rev. St. §§ 3466, 3467, 5236), held that the United States government has a prior lien over other creditors on the proceeds of the sale of bonds deposited as security for the circulation of national bank bills. as well as a prior claim in the distribution of the bank's assets, for the payment of claims of the government against such bank, and may apply the proceeds of such assets to the payment pro tanto of its claim for postal funds and money order funds deposited in such bank by the postmaster. In giving his opinion, Mr. Justice Harlan said: "Very early in the history of the government it was provided by statute that debts due the United States should be first satisfied in all cases where any revenue officer. or other person, thereafter becoming indebted to the government, by bond or otherwise, should become insolvent, or where the estate of any deceased person in the hands of executors or administrators should be insufficient. to pay all the debts due from the deceased. The pri,.ity thus established was declared to extend to: only to cases in which an act of legal bankruptcy should be committed, but to cases in which a debtor, not having sufficient property to pay all his debts, should make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor should be attached by process of law. Acts March 3, 1797 (1 Stat. 515): That was an act providing more effectually for the settlement of accounts between the United States and receivers of public money, but it was held to include all debtors to the United States, whatever their character and by whatever mode bound. U. S. v. Fisher, 2 Cranch [6 U. S.] 358; Beaston v. Farmers' Bank. 12 Pet. [37 U. S.] 102. In the act of March 2, 1799, regulating the collection of duties on imports, a like priority was given to the government as to the claims upon bonds given for the payment of duties (1 Stat. 676). Act of 1790 (1 Stat. 169). The policy inaugurated by these statutes seems to have been steadily maintained by the government. Their substantial provisions have been preserved in the authorized revision of the statutes. Rev. St. § 3467, et seq. It is insisted, however. by the defendants, that a different rule must be observed in the distribution of the assets of an insolvent national bank in charge of a receiver appointed by the comptroller of the currency. They assume that the national bank act of 1864. the provisions of which are preserved in the Revised Statutes, placed all the creditors of a suspended national bank upon an equal footing. except that for any deficiency in the proceeds of the sale of United States bonds pledged to secure the circulation of such bank, but for no other purpose, the government is given 'a first and paramount lien upon all the assets of such association.' and to that extent, and no farther, it is entitled, in the distribution of assets, to priority above all other creditors. 13 Stat. 114. This position, it is earnestly claimed. is sustained by section 50 of the act of 1864. Rev. St. § 5236. The specific contention is, that these provisions of the national bank acts operate as a repeal or modification. pro tanto, of the statutes which give the government a priority in the distribution of the estates of those indebted to it. We cannot yield our assent to any such construction of the statutes in question. The authorities cited by the learned counsel do not, as we perceive, justify the conclusion for which they contend. They only announce

the general rule, recognized in all the books, 'that a subsequent statute which is clearly repugnant to a prior one, necessarily repeals the former, although it does not do so in terms; and, even if a subsequent statute be not repugnant in all its provisions to a prior one, yet, if the. later statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the former act, leges posteriores contrarias abrogant.' * * * It is admitted by learned counsel that before the passage of the act of 1864, the government had a priority in all the cases specified in the acts of 1797 and 1799, whether the debtors were individuals or corporations. It is also admitted that such priority now exists, except in the cases of national banks for whom receivers have been appointed. But no sound reason has been assigned for a distinction in behalf of the general creditors of national banks, which, counsel concede, is not allowed in behalf of the creditors of other corporations, by whatever authority created, and which are indebted to the United States. The words of the statute are broad, that 'whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied.' The defendant bank is, therefore, embraced by the express language of the statute. The same considerations of public policy which suggested the act of 1797, exist now, as well as when the act of 1864 was passed, and there is no such irreconcilable inconsistency between the two acts, or between the several provisions of the Revised Statutes upon the same subject, as requires us to assume that congress intended by the last statute to surrender the government's priority in any case covered by the prior statute. The two acts may well exist together."