The opinion of the court was delivered by
Gibson, J.
The particular provisions of the act of the 21 st of March, 1772, which are applicable to the point before us, are taken from the statute 8 Anne c. 14, by which it was enacted, *158 that landlords might destrain within six months next after the expiration of the lease, (a thing that could not be done at the common law) and that goods liable to distress should not be taken in execution without paying the arrears to the landlord, not exceeding the rent of one year. Bac. Abr. Rent, K. (in note.) The object of these provisions was to enable the landlord to give the tenant time not exceeding six months, without incurring the risk of losing his remedy by distress; and this was effected by giving the landlord a lien on the tenant’s goods for at least six months after the expiration of the lease. Under the statute, therefore, it is plain the landlord had priority of right against execution creditors, only for the rent of the last year. The only difference between the statute and our act of assembly is, that with us the landlord may distrain at any time after the expiration of the lease, provided it be during the continuance of his title. But it cannot be supposed that this variance was intended to produce a difference as to the year for which the landlord might claim. In fact the consequences of the difference were not thought of ; and when the legislature provided that the landlord should have the rent of a single year, we cannot but suppose they meant to adopt these provisions of the English statute in the aspect in which they were viewed by those who had enacted them. Had they intended to produce any difference, it is natural to suppose they would have given the landlord a preference for all the rent due, as he might have distrained for all; but they have not done so. Where the rent is in arrear for a number of years, it will generally make little difference whether the landlord be allowed his preference for one year more than another, as he is entitled for but one in the whole; yet if the amount of the rent were different, in different years it would be palpably unreasonable to permit him to elect. Where the law appropriates money to a person in a particular character, it must be received in that character although it be an injury to him to receive it so, and although the law intended to benefit him. Downing v. Kintzing, 2 Serg. & Rawle, 326. But what is decisive in this case is, that Kline the landlord for the preceding year had lost the right to distrain. His title as landlord did not continue to the time of the levy; and consequently his lien, which was originally intended to guard his right of distress whilst he chose within a limited time to suspend the exercise of it, was gone. Now by the custom of this state the landlord for the current year was entitled to demand the rent up to the time of the levy, although by the terms of the lease no rent was due. It is too late to inquire how a custom so contrary to the evident intention of the act obtained the force of a law; it has finally been established by a decision of this court, and we cannot now question it. The case then is just this: The goods of Miller who is the tenant of Lichtenthaler under a lease for a year, are seized in execution. Miller who had been the tenant of Kline *159 under a lease of the same premises for the preceding year is indebted also to Kline for that years rent; and Kline lodged a landlord’s warrant with the officer who had levied the goods. Thompson the surety of Milter, in the lease from Lichtenthaler, gives notice to the latter to claim his preference, and to look to the officer for his rent. This Lichtenthaler refused to do; and on the contrary acted as the agent of Kline, and received the rent to Kline’s use. His object in doing so is easily discoverable, Kline had been his guardian, and had leased the premises to Miller as such ; and as the rent for this year also was ultimately coming to him,, he may have thought it advantageous to him to take the rent out of the proceeds of the tenants goods, for the first year, for the payment of which, Lichtenthaler had not taken the precaution to require a surety in the lease. But as the law appropriated the proceeds of the tenant’s goods to the payment of the rent of the current year, he could not substitute Kline’s demand for his own, and afterwards resort to the surety of the tenant. The case falls exactly within the principle established by this court in the commonwealth for the use of Bellas v. Miller, 8 Serg & Rawle, 452, that where the creditor has the means of satisfaction either actually or potentially in his hands, and does not chuse to retain it, the surety is discharged. Kline was accountable to Lichtenthaler as the guardian of the latter, and if the rent of the preceding year had been lost by his neglect, would have been chargeable with it in his guardianship account. It was therefore a demand which was separate from, that of Lichtenthaler, and one which he was not bound to secure. The equity then was between Kline and Thompson, the surety of Miller. The former by not distraining whilst he might, has lost his remedy; by which the other had gained an advantage of which we have no right to deprive him: he stands as a surety who apprised the creditor of his having the means of obtaining satisfaction without resorting to his his personal responsibility, and as the creditor has thought proper not to apply those means to their proper use, the surety is discharged.
Judgment affirmed.