# Ege *against* Ege.

Upon a lease for a term of years which contains a covenant by the lessee to pay the rent in discharge of the debts of the lessor, he has no right of distress for rent in arrear.

If a lessee for years assign his whole term, reserving a rent, without a special clause of distress, he cannot distrain for the rent so reserved. But if the lease be from year to year, and he assign only part of the term, he may distrain, or have any other legal remedy to enable him to collect his rent.

A stipulation in a lease for the payment of a rent of 7000 dollars, or 6000 dollars upon a specified contingency, is sufficiently certain to entitle the landlord to the remedy by distress.

Upon a sale by the sheriff of the goods of a tenant upon an execution, the landlord is entitled to have out of the proceeds of the sale one year's rent, if so much be due, of the year's rent in which the sale was made, or the preceding year.

The landlord will be entitled to one year's rent, if he give notice to the sheriff at any time before he pays over the money made upon his execution.

ERROR to the common pleas of *Cumberland* county.

George Ege against Peter Ege. Issues directed by the court of common pleas to try the right of the respective claimants to the proceeds of the sale of the personal estate of John M. Woodburn, sold

by the sheriff upon executions. The facts which gave rise to the questions of law determined were these:

George Ege, being the owner of Mount Holly Iron Works estate, leased the same by the following agreement:

" Article of agreement made and finally concluded this 28th day of July 1831, by and between George Ege, of South Middleton township, and Peter Ege, of Dickison township, Witnesseth that the said George Ege, for and in consideration of the covenants and agreements to be kept and performed by the said Peter Ege, on his part, and which will be hereinafter stipulated, hath this day leased and demised to the said Peter Ege, for and during the term of five years from and after the 1st day of November next, ' Mount Holly Iron Works,' and all the lands and rights of every kind whatsoever which are now attached to or belong to the said estate and which are necessary to the full enjoyment thereof, in the business of making iron with the furnace and forge, and in the occupation of all the other buildings and works thereto in any manner attached, hereby giving and granting to the said Peter Ege full privilege of cutting and coaling timber at such places and at such times as he may deem convenient, proper and necessary for keeping the said forge and furnace in operation, and which is consistent with the nature and situation of the estate. In consideration whereof, the said Peter Ege doth on his part covenant and agree to pay to the said George Ege the annual rent or sum of 7000 dollars, to be paid in the manner and for the purposes hereinafter mentioned and agreed upon. It is agreed between the parties that the said Peter Ege shall have the possession of the entire estate immediately, for all the purposes of putting the furnace, forge, mill and works in such repair as will enable him to enjoy the same during his said term, to the extent of their ability to operate, and consistently with the interest of the now contracting parties, the expense of which repairs is to be credited to the said Peter Ege out of the rent, all other repairs during the said term to be at the expense of the said Peter Ege. It is also agreed that the said Peter Ege shall, from time to time, as the rent becomes due, appropriate the same to the payment of the just debts of the said George Ege; and if it shall become necessary to pay any of the said debts, or to assume the responsibility of paying the same in anticipation of the said rent, then the parties hereto agree that it shall be so done. The said Peter Ege doth further covenant that he will manage, or cause to be managed, the Mount Holly estate after the manner of a good iron master, and the said George Ege doth agree, that if at the end of the said term of five years it shall not manifestly appear, and by the admission of the said Peter Ege, that the said works have cleared beyond all expenses of constructing the same, the annual sum of 12,000 dollars, that then, and in that case, the rent to be paid by the said Peter Ege shall be and is hereby fixed at the sum of 6000 dollars.

" If at the approach of the termination of the said term of five years

it shall be the wish of the said George Ege to prepare stock and make other arrangements to conduct and carry on the works himself, when the term is ended, he shall be permitted so to do, Provided it shall be so done as not to interfere with the management under the direction of the said Peter Ege; and if the furnace shall be in blast when the said term is ended, the last year thereof shall be extended to a time when, by ordinary good management, the same should blow out; provided that such extension shall not exceed three months, when the said term shall be ended. George Ege shall then take the stock then on hand at a fair valuation."

After the execution of this lease, Peter Ege agreed to lease the same works to John M. Woodburn, the terms of which only appeared from the parol testimony of Joseph A. Ege, which was as follows:

Joseph A. Ege, sworn. The works were leased on the 31st of July 1831, from George to Peter Ege; I moved to Holly the 15th of August 1831, to carry on the works for Peter Ege; three days after that my brother George died. I had then to leave Holly works and come home to Pine Grove. On the 21st of August, as near as I can recollect, I had a conversation with J. M. Woodburn. I wished to give up the works to Captain Ege, as our designs were deranged. On the 27th August, J. M. Woodburn came to Pine Grove, and on that day and Monday following, the agreement was entered into, that he was to go to Holly as a renter from Peter Ege. He was to take the works on the same terms that Peter was finally to pay, and to pay it to Peter Ege. I advised J. M. Woodburn of the weight of the matter, and told him if he thought he could not go through, not to undertake it. He wanted me as a partner; again talked to G. W. Woodburn; he at length determined to have no partner. He said he would try it a year at all events. On the 7th of September, I commenced moving from Holly. I went the 17th of September. J. M. Woodburn came there the 16th or 17th. I had to stay till he came. He remained in possession, under his contract, till the sale of his property, which is the occasion of the present suit. There was no written lease. It was neglected. ·

J. M. Woodburn went into possession of the estate, and continued to carry on the business until the 23d of March 1835, when his personal property there was all sold by the sheriff upon several executions, which had issued to August and November terms 1834, and January and April terms 1835. The property sold for 4191 dollars 78 cents. On the 17th of March 1835, Peter Ege, as landlord of J. M. Woodburn, gave notice to the sheriff that he claimed one year's rent out of the proceeds of the sale. Previously to the day of sale, George Ege issued a landlord's warrant against Peter Ege, and distrained the property of J. M. Woodburn on the premises, by virtue of which he claimed the proceeds of sale of the property for the rent due by Peter Ege to him. The execution creditors claimed

it by virtue of their levies and sale of the property. There were two issues, in one of which Peter Ege was the claimant, and in the other the execution creditors.

The court, in the first issue, charged the jury, that as by the terms of the lease the rent was not payable to George Ege, but to his creditors, and as Peter Ege had the right of appropriating the same, George Ege could not have distrained for the rent, nor served notice on the sheriff, and claimed the money. The jury found against George Ege, and for defendant, Peter Ege, in this first issue.

In the issue by the execution creditors, their counsel put the following points to the court:

1. The rent due from J. M. Woodburn to Peter Ege, was to be on the same terms, and paid in the same way, as that due from Peter to George by the lease of the 28th of July 1831. The court say, " this is a fact to be determined from the evidence by the jury;" as I understand the testimony, it is the other way.

2. The rent was uncertain in amount when the levy was made, and could not be distrained for nor recovered in this issue. That P. Ege alleged in his specification, in the other issue, that the rent was uncertain and not payable to the end of the term.

3. That as against the execution creditors upon executions issued to January term 1835, this claim for rent, if available at all, is only available from the 1st of November 1835, until the time the levy was made.

4. That the notice of Peter Ege to the sheriff was given too late, being after the return day of the execution.

5. That George Ege is the only landlord under the act of 1772, entitled to recover in this case.

6. Peter Ege having alleged in his specification filed in the first issue in this case, that the rent was uncertain, and not payable till the end of the term, and that Woodburn had rented from him, for the same rent, and on the same terms, he is estopped from denying the same, and therefore cannot recover in this suit.

All which points the court (Reed, President) answered in the negative. And verdicts and judgments in both issues were rendered for Peter Ege.

The opinion of the court upon the several points was assigned for error.

*Knox* and *Graham,* for plaintiffs in error, contended that Peter Ege had not the right to distrain, because he had parted with his whole term; and not having the right of distress he could not claim under a notice; and cited Litchenthaller *v.* Thompson, 13 *Serg. &* *Rawle* 157. That the rent was uncertain, and therefore there was no right of distress; *Co. Litt.* 142, *a; Co. Litt.* 96, *a;* 1 *Salk.* 262; 4 *Mod.* 78; Wells *v.* Hornish, 3 *Penns. Rep.* 31; 1 *Bay.* 315; *Addison* 347; 1 *Stra.* 408.

v.—s

[Ege v. Ege.]

*Biddle* and *Watts*, contra, cited *Com. on Land. and Ten.*; 6 *Law Lib.* 391; *Bradby on Dis.* 169; 2 *Stra.* 787.

The opinion of the court was delivered by

ROGERS, J.—It would be inconsistent with the nature of the contract between George and Peter Ege, that George Ege should have the right to distrain for the arrearages of rent. It is agreed between them that Peter should appropriate the rent, as it became due, to the payment of the debts of George. He is also vested with power to pay debts before the rent becomes due, or, if need be, to assume the responsibility of paying them. In case of mismanagement, in relation to the trust, the remedy would not be by distress, but by an action on the agreement; for the rent is not payable to George, but to his creditors, and the right of appropriation is in the lessee, who is clothed with ample power by the lessor, to manage the estate, under the stipulations in the lease. As George Ege has not the right to distrain, neither is he entitled to any portion of the money raised by the sheriff's sale, as is decided in Litchenthaller *v.* Thompson, 13 *Serg. & Rawle* 157, and this removes the objection that there are two landlords who claim the fund, and supersedes the necessity of deciding upon conflicting claims of a first and immediate landlord. But had Peter Ege a right to distrain? This depends upon the nature of the agreement between him and the sub-tenant. Was this a contract or assignment of the whole term, or an underletting from year to year, with a reversionary interest in the lessor? For if a lessee for years assign over *his* whole term, reserving a rent, without a special clause of distress, he cannot distrain for the rent so reserved. *Bradby on Distress*, 1 *Law Library* 68. But the law is otherwise, if this was a lease from year to year. The nature of the lease depends on parol testimony, which the court left to the jury. The evidence is loose and unsatisfactory, but still, we cannot say the jury were wrong in finding that the lease was, in the first instance, for one year, and that the estate was held under the same terms and conditions from year to year. It follows that Peter Ege was entitled to all legal means to enable him to collect the rent, by distress or otherwise, to comply with his agreement with his lessor, and to fulfil the engagements with his creditors.

It is said that the rent is uncertain, and that certainty is essential to the nature of a rent; that it must be certain in its quantity, extent and time of payment, or at least be capable of being reduced to such a certainty, and, therefore, that a rent, reserved after the rate of 18 pounds a year, was held bad for uncertainty. But in the case cited, the contract neither specifies the amount of the rent, the nature of it, whether in kind or money, nor the periods of its payment; in all these particulars it differs from the present case. The lease is for 7000 dollars a year, reducible, it is true, to 6000 dollars, in a certain contingency. The rent is payable in money, and is payable yearly, for where the rent is ascertained, a general reservation makes

[Ege v. Ege.]

it payable yearly.　Cole *v.* Sury, *Latch.* 264.　Besides, the rent is undoubtedly certain, to the amount of 6000 dollars, which the tenant must pay, at all events, and the landlord limits his claim to that sum.

By the common law, when an execution was levied upon the tenant's goods, the landlord lost his rent, and could not enter to distrain, for the execution took place of all debts, except specific liens, and the goods taken by the sheriff, being *in custodia legis,* could not be distrained.　For remedy of this, and in aid of the landlord, by the statute of 8 *Anne, ch.* 14, it is made imperative upon the sheriff, before he *removes* the goods, taken in execution, to pay to the landlord one year's rent.　But the act of the 21st of March 1772 directs, that chattels levied in execution shall be subject to the payment of one year's rent for the premises on which they shall be seized, and that the sheriff shall, after the *sale* of the goods, pay to the landlord, or other person empowered to receive the same, such rent so due, and apply the overplus thereof, if any, towards satisfying the debt and costs.　Under the statute of *Anne,* if the sheriff removes the goods from the premises, as is the practice, in all cases, before sale, without having handed over to the landlord one year's rent, he will be liable to an action on the case, founded on the statute.　In order, however, to charge him as a wrongdoer, it has been held that the landlord must give notice of his claim, and the notice must be given under the statute of Anne, before the removal of the goods.　But in Pennsylvania, under our statute, the sheriff is not estopped from removing the goods, and he is protected, provided he pays over to the landlord one year's rent, or the landlord neglects to give notice of his claim in proper time.　Notice or knowledge of the landlord's claim is not required for the protection of the sheriff, who otherwise may be subjected to an action, on the statute, without having any knowledge that the rent is in arrear.　In Mitchell's Executors *v.* Stewart and another, 13 *Serg. & Rawle* 295, it is held, that a landlord claiming to be paid his rent out of the proceeds of an execution, is bound to give notice thereof, before the execution is returned.　It is intimated that the landlord loses his lien, unless notice is given before the time the writ is returnable; but the case called for no such allusion, and the opinion is founded on the erroneous assumption, that the act was intended for the benefit of the execution creditor, as well as the landlord and the sheriff　The levy, removal and sale of the goods, are notice to the landlord of the execution, and hence, when he claims arrears of rent, it is but equitable that he should give notice to the sheriff of his claim, or at least that the sheriff should have knowledge of its existence.　It would jeopard the rights of the landlord to fix any other period than the sale, as the limit of his right to give notice.　In practice, it is usual to sell goods taken in execution, after the return day of the writ.　The sheriff is directed, by the act, to pay over, *after the sale,* one year's rent to the landlord; it would therefore seem that all the purposes of the act are

[Ege v. Ege.]

answered, if notice is given at any time before the money is paid over; at any rate, there is no reason for confining it to the return day, without regard to the sale of the goods, or the actual return of the writ. These questions will only arise when the debtor is insolvent, and but little mischief can be apprehended from this construction of the act to execution creditors, who generally levy upon all the property of the debtor. It is, therefore, of but little importance to them, whether the notice is given before the return of the writ, or is delayed until the sale, and before payment of the money.

We are also of the opinion that the landlord is entitled to a whole year's rent, but it cannot exceed one year's rent. This he is entitled to without regard to the time the lease commenced, or the time of the sheriff's sale. This construction has been repeatedly given to the act.

Judgment affirmed.