## Parker and Keller's Appeal.

Under the act of 1836, the landlord's priority to execution creditors is not confined to the last year's rent, so that no more than one year's rent be received. Nor is it material that the lessees held under a lease subsequent to that on which the arrearages were due, the rent in the latter being reserved in iron, and in the former in money.

It seems the landlord's right to an apportionment of the rent up to the day of the levy under the construction given to the act of 1772, is not varied by the act of 1836.

Under the act of 1844, taxes assessed on real estate are not payable out of the proceeds of an execution levied on the chattels of the owner of the land.

From the Common Pleas of Cumberland.

*June* 7. Jackson and others were lessees of the Carlisle Bank and Haldeman, under a demise ending December 31, 1845, at an

annual money rent. In November, 1845, a new lease was exe-
cuted for the year 1846, in which the rent was reserved in iron.
In August, 1846, the personal property on the demised premises
was sold under the execution of appellants and others, and on the
distribution of the proceeds two questions were raised. The land-
lord claimed one year's rent, due December 31, 1845, in money;
the rent for 1846 having been partially paid. The other claim
was for state taxes assessed on the realty.

In giving judgment, the court below said: "The bank and Halde-
man claim one whole year's rent, ending the 31st December, 1845,
which is admitted to be due them, but which the creditors resist,
and say, first, that the bank, having leased this estate to the de-
fendants in the executions for another year, after the expiration
of their term on the 31st December, 1845, for a different rent than
that reserved on the first lease had so far changed their relation-
ship with the defendants, as to preclude them from distraining, and
therefore entitled to no portion of the fund in court for the rent
due 31st December, 1845. And, second, if they be entitled to a
year's rent, they are required to compute the time in making it,
from that immediately preceding the levy.

"The authorities relied upon in the argument to support the first
position assumed, by the creditors, do not sustain it. Stanfill v.
Hickes, 1 Lord Raymond, 280, simply decides that the landlord
cannot distrain for rent due upon an expired lease, although the
tenant remains in possession of the property under a lease at will,
which at that date was undoubted law, but remedied afterwards by
the passage of 8 Anne, ch. 14, &c. Cook v. Cook, Andrews, 219,
referred to by Bradby, in his Treatise on Distress, 83, by no
means sustains his abstract. That case, as reported, is simply this:
At Lady-day, (25th March,) 1735, a landlord let an estate at £75,
for one year, ending at Lady-day, 1736, which rent was not paid. A
few days before the expiration of the lease, the tenant told his land-
lord he was not able to keep the estate, but desired as much of it as
would pasture sixteen or seventeen cows for the benefit of his family,
to which the landlord assented, and also leased to him the house and
garden, without stipulating any sum to be paid as the rent. The
tenant's wife resided in the house, and pastured the cattle in differ-
ent places on the estate, from Lady-day, 1736, (25th March, 1736,)
until January, 1737, when the tenant's goods and stock were taken
in execution. Under these circumstances a motion was made to
the court to order the sheriff to pay the landlord the £75 rent, due
25th March, 1736, which the court refused, and said that the land-

lord had not made out a case entitling him to relief on motion, inasmuch as he did not show how the first year's rent was payable; nor whether any rent was reserved under the second lease. Taking the most favourable view of this case for the landlord, it is clear he was not entitled to his claim under the statute of 8 Anne, by which but six months are given to the landlord to distrain for rent due upon an expired lease, and in this case more than nine had elapsed, so that upon the first lease he clearly had no claim; and upon the second he had reserved no rent; consequently the court, on motion, refused to award him any; leaving him to his action for its recovery. Under the English, as well as our own statutes, there must be an existing tenancy at the time of the execution to entitle the landlord to claim his rent; but of the character of the lease by which that tenancy is created or continued, whether by renewal, holding over, or a new lease between the same parties, neither the language of the statutes referred to, nor judicial decisions upon them, (so far as I have been able to discover,) contemplate a difference. All that is required is, that the tenancy exist, and if the relation of landlord and tenant be once established, the right to distrain follows as a legal incident to it, and can only be taken away by that which amounts to its dissolution; as in the cases of Hodgson *v.* Gascoigne, 5 Barn. & Ald. 88, (7 E. C. L. R.,) and Beltzhoover *v.* Waltman, 1 Watts & Serg. 417. The lease in the case before us, for the year commencing 1st January, 1846, was between the same parties; no other interests were involved, and as between the parties to it, the right of the lessors to distrain is as undoubted as if the lessees had held over under the previous lease; which I suppose is not at this day questioned in Pennsylvania. The inquiry then follows, how much rent is the bank entitled to? This depends upon the construction of the 83d section of the act of 16th June, 1836, which enacts, 'the goods and chattels being in or upon any messuage, lands, or tenements, which are or shall be demised for life or years, or otherwise, taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution. Provided, that such rent shall not exceed one year's rent.' This act has never received an authoritative judicial construction; and though the general phraseology is the same with that of the 21st March, 1772, it contains an additional provision not found in that law. The words 'and liable to the distress of the landlord,' are added in the act of 1836, and if they have any meaning, it is, that the rent not only be due to the landlord, but

that, to entitle him to claim the money when the property has been taken in execution, he must also have the right to distrain. Now it is clear that no distress can be made until the rent is due and payable. It is true, an inveterate custom extending the right of the landlord to rent up until the date of the levy, though in the middle of a quarter, prevailed in this state, and that too, as is said by Chief Justice Gibson in Lichtenthaler *v.* Thompson, 13 Serg. & Rawle, 157, ' contrary to the evident intent' of the act of 1772, to such an extent as induced the court to lend it a judicial sanction in West's Administrator *v.* Zink, 2 Yeates, 274, and subsequently in Binns *v.* Hudson, 5 Binn. 505. Under the act of 1836, however, the plea of a long established custom could not be so successfully urged; and containing as it does the provision that the rent be due, with the additional one, that the property levied in execution be liable to distress before the landlord shall effectively claim his rent, I prefer giving to this law a common-sense construction, and saying, that the legislature meant what they said, and that the landlord under it cannot claim rent from the sheriff unless he can distrain for it, which he cannot do before it is due and payable. Upon this construction, there was nothing due to the bank and Haldeman, under the lease commencing 1st January, 1846. The first quarter was paid, and the time for paying the second had not arrived when the levy was made upon the defendants' property, consequently no part of that time should fall within the year allowed by law, unless it is necessary that it should be embraced, as part of the only period to which the lessors are entitled to rent; which the current of authority, commencing with Dod *v.* Saxby, 2 Strange, 1024, and coming down to Ege *v.* Ege, 5 Watts, 134, clearly show is not the case. The landlord is entitled to one whole year's rent, if that much be due; and this too, as is said by Judge Rogers, in delivering the opinion of the Supreme Court in Ege *v.* Ege, ' without regard to the time the lease commenced, or the time of the sheriff's sale.'

" The 42d section of the act of 29th April, 1844, p. 501, in part provides that ' any state tax remaining unpaid by any individual or corporation, after said tax is due and payable by said county to the Commonwealth, shall bear an interest of six per cent., and be a lien on the estate on which it is charged, till fully paid and satisfied.' It is admitted, in the case before us, that the taxes were assessed alone upon the real estate; the fund in court was produced by the sale of personal property, of which the lease formed a part; the lien of the taxes, therefore, under the section of the

law referred to, remains upon the real estate, and are not legally chargeable upon the fund now in court."

They therefore decreed the amount of one year's rent to the landlord, and the residue among the execution creditors. From this decree the creditors appealed.

*Biddle,* for appellants.—Two questions arise in this case. 1st. Is the bank entitled to any rent growing out of an expired lease, against an execution creditor, whose levy was made on the property of the tenant holding by a new lease, differing in its terms from the one that was determined? 2d. If the bank is entitled to rent, is not their claim confined to the year immediately preceding the day of levy, counting back from that day? On the first proposition he cited 83d sec. act June, 1836; 4th and 14th secs. act 1772; Bradby on Distresses, 90, 70, 81, 82; Bennet's Case, 2 Strange, 787; Lord Raymond, 280; Hodgson *v.* Gascoigne, 5 Barn. & Ald. 88; 2 Salk. 414; 5 Watts & Serg. 220; 6 Watts & Serg. 335; Andrew's Rep. 220; Beltzhoover *v.* Waltman, 1 Watts & Serg. 417.

In support of the 2d: Bradby on Distresses, 83; Cook *v.* Cook, Andrews, 217, 220; Lichtenthaler *v.* Thompson, 13 Serg. & Rawle, 157.

*Graham,* contrà.—In the case of West *v.* Zink, 2 Yeates, 274, decided in 1798, it was held that the landlord was entitled to rent up to the date of the levy. To the same point are Binns *v.* Hudson, 5 Binn. 506; Lichtenthaler *v.* Thompson, 13 Serg. & Rawle, 158; which were under the act of 1772, sec. 4. Under act of 1836, a landlord is entitled to rent up to the day the goods are taken in execution, although in the middle of a quarter; 6 Watts & Serg. 335. A landlord is entitled to a whole year's rent, without regard to the time the lease commenced, or the time of the sheriff's sale; Ege *v.* Ege, 5 Watts, 134, 140.

After the landlord has received one year's rent, paid out of the execution money, according to stat. 8 Anne, ch. 14, another execution was issued, and he moved the court for a rule on the sheriff for another year's rent; but the court held the intent of the statute was only to continue a lien as to one year, and to punish him for his laches, if he permitted more than a year to be in arrear; 2 Strange, 1024; showing that, under all circumstances, the law permitted him to have the benefit of one year.

*June* 14. BELL, J.—We concur in the conclusions of the court

below, and for the reasons assigned in the opinion that accompanies the record, except as to that portion of it which relates to the construction of the act of 16th June, 1836. In the view we take of the second objection raised by the execution creditors against the landlord's claim, it might not be necessary to say, whether the statute admits of a different interpretation than that assigned to the act of 1772, but this point seems to be settled by the case of Morgan v. Moody, 6 Watts & Serg. 335. Apart, however, from this, the determination in Ege v. Ege, 5 Watts, 134, and Richie v. McCauley, 4 Barr, 471, settled that the year's rent to which the landlord is entitled under the statute, is not necessarily to be confined to a year ending on the day of the sheriff's levy. Although the reasoning of the Chief Justice in Lichtenthaler v. Thompson, 13 Serg. & Rawle, 159, would seem to restrict the landlord's claim to the last year, where two or more years' rent remains in arrear at the time of the levy, (though the case was decided on another ground,) yet where, as here, there is but one year *actually* due, there is nothing in the fact that another year has commenced to run, and a part of the rent accruing during its pendency been paid, that ought to deprive the lessor of the benefit of the statutory provision. Though it should be admitted, that, as is said in Dod v. Saxly, 2 Strange, 1024, the object of the statute is to secure the landlord a year's rent, and to punish him for his *laches* in suffering more to be in arrear, yet, I repeat, in the present instance, the lessors do not appear to have been guilty of such *laches*. The Court of Common Pleas was therefore right, in apportioning the proceeds in court in payment of the rent due on the 31st December, 1845. Decree affirmed.