# Weltner's Appeal.

1. Weltner, as guardian, leased land of his ward and was discharged from his trust, the tenant being in arrear. Brownfield was appointed guardian and leased to the same tenant. Weltner obtained judgment against the tenant; the tenant occupied under Brownfield for two years, and entered on a third year when Brownfield was removed and Hagan appointed guardian. Weltner, during the third year, issued execution against the tenant on his judgment, the proceeds of sale were brought into court for distribution. On appeal the Supreme Court awarded to Hagan the rent for the proportion of the third year, and the balance of the proceeds to Weltner for rent during his trust, in preference to Brownfield.

2. The ward as owner of the demised premises was in equity entitled to one year's rent out of the proceeds of the sheriff's sale.

3. Weltner's judgment without satisfaction, did not take away the ward's right of distress.

4. The fund being less than one year's rent, the ward was entitled to the whole of it.

5. The landlord is not confined in his claim to the rent for the last year or that immediately preceding the sale, so that no more than one year be claimed.

6. If there be no equities to interfere, the law would apply the proceeds of sale to the rent first due.

7. The judgment for the rent to Weltner as guardian, gave the ward no additional right or security; the tenant having no property on which it could be a lien.

8. Weltner having obtained judgment against the tenant on which the fund had been realized, had a legal right superior to Brownfield's.

November 16th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Fayette county*, in the distribution of the proceeds of the sheriff's sale of the property of William F. Core: No. 229, to October and November Term 1869.

Under a fi. fa. issued by John Weltner, guardian, &c., of M.

[Weltner's Appeal.]

M. B. Core (now Hutchinson) against W. F. Core, there was in court for distribution $423.50 of the proceeds of the defendant's personal property. G. W. K. Minor, Esq., was appointed auditor to make distribution of the fund. From his report and the evidence it appeared that Weltner had been guardian for Miss Core, and had leased her farm for a number of years to William F. Core, who had fallen into arrears for the rent. In March 1865 Weltner settled his account as guardian, and at his own request was discharged from his trust. Basil Brownfield was, on the 6th of June 1865, appointed guardian of the minor. On the 6th of September 1866 Core gave his judgment note to Weltner for $992.83, the amount of his arrearages of rent which had accrued during Weltner's guardianship. Judgment on the note was entered January 7th 1867—of this judgment $500 was assigned to Brownfield as guardian. On the 16th of June 1868, upon cause shown, the court removed Brownfield from his trust, and on the 17th appointed Robert Hagan in his place, and ordered Brownfield to deliver to him all the property, securities, &c., of the ward in his hands. A fi. fa. was issued by Weltner on his judgment, he intending to collect only that part of it not assigned to Brownfield. Under this execution, a levy was made September 1st 1868 and the fund in court was raised. At a hearing before the auditor Brownfield claimed the fund as landlord for rent due for the ward's farm for the years 1867 and 1868. On a subsequent hearing a notice, dated January 23d 1869, purporting to have been given by Hagan to the sheriff was produced, notifying the sheriff "that Wm. F. Core at the time of the levy and sale was occupying as a tenant the lands of said M. M. B. Hutchinson for the rent of the year 1867, in the sum of $450, and for the year 1868 in the sum of $500, due and unpaid. I, as her guardian, claim the proceeds arising from said sale, to be applied to the payment of rent due said ward, or me, as guardian of said ward." Hagan informed the auditor that he never gave or authorized any one to give the notice, that he had not signed it nor did he claim the fund.

Core was in arrears to Brownfield for rent of the year ending April 1st 1867. He continued to occupy the land under a parol lease until the levy; the rent for the year from April 1st 1867 being $450, and for the succeeding year $500.

The auditor concluded his report, saying:—

"The question is then presented, who is entitled to the fund, the execution-creditor or the late guardian, Basil Brownfield? The evidence of Wm. F. Core, the lessee, shows there was nothing specified in the contract or lease, but *so much a year rent*. At the time the levy and sale were made, Core doubtless owed Brownfield. The rent of 1867 was at least due, and perhaps not paid. That of 1868 was not due. If the right of distress upon the property of Core existed at all in Brownfield, it could only have been exercised for the rent due him on the year 1867. But did said

right exist, and could he have a distress at all at that time? The right to distrain property on the demised premises, subject to distress, belongs to the landlord, and if he neglects to exercise his right until after he has parted with his title to, and interest in, the demised premises, and thereby ceased to be landlord, he cannot exercise it afterwards. In this case he had so neglected and had so ceased to be landlord—his right, title or interest had passed from him at the time of the levy and sale of the goods and property of the defendant.

"The auditor gives the fund to John Weltner, the execution-creditor."

He reported that the costs should be paid out of the fund.

The report, on exceptions by both parties, was recommitted to the auditor " to inquire whether Hagan gave notice that he claimed the rent out of the proceeds of sale, and if so, whether he afterwards withdrew it, and when it was given and withdrawn, and whether he persists in the notice or has abandoned it," &c. On the hearing under this order, Hagan was examined and testified, that he never gave notice to the sheriff that he claimed the fund, nor authorized any one to do so, that Brownfield asked him to sign a paper similar to that before the auditor, that he told Brownfield he thought it was between Weltner and Brownfield, that witness's counsel advised him that he did right in not signing it. Being asked if he relinquished all claim to the fund, Hagan said:

"I am willing to accept the money in the sheriff's hands, but I expect to hold Brownfield, or hold on to both. If I am entitled to the money coming on this execution, as guardian, I want it and apply for it under that head. I desire to avoid all personal responsibility, and do my duty under the law, as guardian."

The auditor having reported this evidence, the court decreed that "rent not exceeding one year be paid out of the fund, and that the costs of the audit be charged to the fund."

Weltner appealed to the Supreme Court and assigned for error, that the court erred:

1. In decreeing that rent not exceeding one year be paid out of the fund, instead of confirming the report giving the fund to Weltner, the execution-creditor.

2. In making their decree so vague and uncertain that it cannot be told to whom the rent is payable, what amount is to be paid, nor when the year for which the rent is to be paid began or ended.

3. In decreeing that the costs of audit be charged to the fund, instead of sustaining the exception of the appellant, and charging Basil Brownfield with the costs of auditing.

*W. Parshall*, for appellant, referred to Greider's Appeal, 5 Barr 422; Boyd *v.* McCombs, 4 Id. 146; Menough's Appeal, 5 W. & S. 433.

[Weltner's Appeal.]

*J. Collins*, for appellee, referred to West *v.* Sink, 2 Yeates 274; Case *v.* Davis, 3 Harris 80; Wickey *v.* Eyster, 8 P. F. Smith 501.

The opinion of the court was delivered, July 7th 1870, by

Williams, J.—The fund for distribution in this case arises from the sheriff's sale of the personal property of William F. Core, who was the lessee and occupant of the farm belonging to his minor daughter, M. M. B. Core, now Mrs. Hutchinson, of whom John Weltner, the appellant, was a former guardian. Weltner settled an account of his guardianship on the 14th of March 1865, and the same day, upon his own petition, he was discharged from the trust. On the 5th of June 1865, Basil Brownfield was appointed guardian of the ward, and upon her petition, on the 16th of June 1868, he was removed from the trust; and the next day, June 17th, Robert Hagan was appointed guardian in his place. After Weltner's discharge he obtained from William F. Core, the tenant of the ward's land, his judgment note for the arrears of rent which had accrued during his guardianship, upon which judgment was entered in the Common Pleas of Fayette county at March term 1867; and on the 25th of August 1868, an alias execution was issued thereon under which the sheriff levied upon the goods of the defendant Core, on the demised premises, and made by a sale thereof, on the 7th of September 1868, the sum of $423.50, the money in controversy.

At the time of the sale, Core was in the occupancy of the ward's land, under a verbal lease from Brownfield, at an annual rent of $500; and he was also indebted to Brownfield as guardian of the ward in the sum of $450 for the rent of the previous year.

On the hearing before the auditor appointed to distribute the proceeds of sale, Brownfield claimed the fund, for rent due him, as landlord and guardian, for the years 1867 and 1868. He also caused a written notice to be handed to the auditor, purporting to come from Robert Hagan, his successor in the guardianship, claiming the fund for the rent of the farm due the ward, or himself as her guardian, for the years 1867 and 1868. Hagan disavowed the notice and claim, and the auditor gave the fund to Weltner, the execution creditor. Brownfield excepted to the report of the auditor, and the court referred the report back to him with instructions to inquire whether Hagan, the guardian, gave notice that he claimed for rent out of the proceeds of the sale; and if so, whether he afterwards withdrew the notice, * * * and whether he now persist in said notice, or has abandoned and withdrawn the same, together with the evidence upon which his report is made. The testimony of Hagan annexed to the supplemental report shows that he did not at any time give notice that he claimed the fund as guardian, nor did he sign any paper claiming the fund, though

13 P. F. Smith—20

requested by Brownfield to sign it. In answer to the question, whether he relinquished all claim to the funds in the hands of the sheriff, he said : If I am entitled to the money coming on this execution, as guardian, I want it and apply for it under that head. I desire to avoid all personal responsibility, and do my duty, under the law, as guardian. Upon the filing of the supplemental report, the court ordered and decreed that rent, not exceeding one year, be paid out of the fund, and that the costs of the audit be charged to the fund.

Did the court then err, as alleged by the appellant, in decreeing that rent not exceeding one year, be paid out of the fund, instead of confirming the report giving the fund to the execution creditor? Is the decree so vague and uncertain that it cannot be told to whom the rent is payable, what amount is to be paid, nor when the year for which the rent is to be paid, began or ended? And should the costs of the audit be charged to Brownfield and not to the fund? Under the facts of this case, Hagan, the present guardian, must be regarded as a party to this proceeding, and as claiming the fund on behalf of his ward. As owner of the demised premises, the ward is, in equity, clearly entitled to the rent; and if the sale of the tenant's goods had been made on the execution of a stranger for an ordinary debt, there could be no doubt as to the wards right to one year's rent out of the proceeds of sale, if sufficient for its payment. But the sale was made on the execution of a former guardian for arrears of rent, which he had failed to collect. Does the fact that the sale was so made, affect the right of the ward to claim, as landlord, the proceeds of sale? Why should it? The goods of the tenant were liable to distress, and might have been distrained by the present guardian, in right of the ward, for all the arrears of rent which the tenant owed: Moss' Appeal, 11 Casey 162. If he could distrain for the arrears which accrued during the guardianship of Brownfield, he could distrain for the arrears which accrued during the guardianship of Weltner. The judgment in favor of Weltner, without satisfaction, did not take away the ward's right of distress: Bantleon *v.* Smith, 2 Binn. 146; 3 Kent Com. 476, note a. Though the appellant's execution was for rent to which the ward is equitably entitled, why may we not treat it as the execution of a stranger so far as there is any conflict between their rights? Thus treating it, it is clear that the ward, or her present guardian in her right, is entitled to the whole fund, inasmuch as it is less than her claim for one year's rent—and there is no error in the decree of the court below so far as it appropriates the fund to the payment of rent not exceeding one year. But to the rent of what year shall the fund be applied? Shall it be applied in satisfaction of the rent which first accrued, or to the rent which last accrued? Or shall it be applied in payment of the rent for the expired portion of the current year although it was not due at the time of the levy and

sale? The ward is equitably entitled to all the arrears of rent due from the tenant or for which he was liable, without any regard or distinction as to the time in which they accrued. It is well settled that the landlord is not confined in his claim for rent, out of the proceeds of the sale of the tenant's goods, to the rent for the last year or for the year immediately preceding the sale, so that no more than one year's rent be demanded and received: Ege *v.* Ege, 5 Watts 134; Richie *v.* McCauly, 4 Barr 471; Parker & Keller's Appeal, 5 Id. 390. And if there were no equities to forbid it, the law, in analogy to the rule in the case of other debts, would doubtless apply the proceeds to the payment of the rent which first accrued. But in this case the equities both of the ward and her present guardian require the proceeds of sale to be applied, in the first instance, to the payment of the apportioned rent of the current year from the 18th of April 1868 to the 1st of September 1868—the date of the levy—amounting to the sum of $208.33⅓. As the sale of the tenant's goods lessened his ability to pay the rent of the current year and to this extent impaired the security which they would otherwise have had for its payment, it is but just that the rent for the expired portion of the year should be paid out of the proceeds of sale. It is true that by the terms of the lease the rent would not have become due and payable until the expiration of the year, but at that time it would have been the duty of the guardian to collect it, and he would have had the right to distrain for it in case of its non-payment. He is therefore entitled, under the provisions of the act relating to executions, to be paid, for the use of his ward, the apportioned rent of the current year, at the time of the levy, out of the proceeds of sale for distribution: Wickey *v.* Eyster, 8 P. F. Smith 501. But how shall the residue of the fund be applied? Shall it be applied in payment of the rent which accrued during the guardianship of Weltner, or to the rent which accrued during the guardianship of Brownfield, his successor in the trust? If the rule in the case of other debts is applicable to rent, it must be applied to the arrears first due. Are there any equities between the ward and her guardians, or between the guardians themselves, which demand a different application? The judgment of Weltner is not a satisfaction of the rent, nor does it take away the ward's remedy by distress. She has the same right to distrain for the rent which accrued during his guardianship, as to distrain for the rent which accrued during Brownfield's. The judgment gives her no additional right or security, for the tenant has no property on which it is a lien. Both Weltner and Brownfield are responsible for the rent which they neglected to collect, and are bound to account for it and pay it over to the present guardian; and both, so far as appears, are solvent and amply able to pay the amounts for which they are respectively liable. Neither the ward, nor her present guardian has any equity to demand a different application of the

residue of the fund than that which the law in other cases would make. Have, then, the former guardians any such equities as should change the result? At the date of the levy and sale, the tenant was indebted to both as guardians for arrears of rent which they had neglected to collect, and for which they are accountable to the ward. In this respect their equities are equal. But the legal right of Weltner is superior to that of Brownfield, for he has obtained judgment against the tenant for the arrears which accrued during his guardianship, and the fund for distribution was realized on his execution. As against Brownfield he is clearly entitled to have the proceeds of sale applied to the payment of the rent for which he is responsible. While, therefore, the ward is entitled to the money, we are of the opinion that the residue of the fund after deducting the costs of the audit should be applied in satisfaction of the rent which accrued during the guardianship of the appellant, and that he should have credit therefor in his account as guardian. It follows that the tenant will be entitled to a credit for a similar amount on the execution out of which the proceeds of sale in this case were realized. We discover no sufficient reason for modifying or reversing the decree of the court below in regard to the costs of the audit, but we think that the costs of this appeal should be paid by Brownfield.

And now, July 7th 1870, it is ordered, adjudged and decreed that the decree of the court below distributing the fund in this case be reformed and modified as follows, viz.: It is now ordered and decreed that the said fund, deducting the costs of the audit, &c., in the court below be paid to Robert Hagan, guardian of M. M. B. Hutchinson, (formerly Core) for the rent of the demised premises, belonging to the said ward, in the possession and occupancy of Wm. F. Core, the defendant in the execution, as tenant thereof: and that the sum of $208.33⅓, part of the said fund, be applied in payment and satisfaction of the apportioned rent of the demised premises of the current year, to wit, from April 1st 1868 to September 1st 1868—the date of the levy—and that the residue of the said fund, after deducting the costs of the audit, &c., in the court below, be applied in payment of the rent owed by the said tenant and which accrued during the guardianship of John Weltner, the appellant, and that the same be credited on his execution against the said tenant, and that he be allowed a credit therefore in his account as guardian of the said ward; and that the costs of this appeal be paid by the appellee, Basil Brownfield.

And it is further ordered and decreed that the record be remitted to the court below with instructions to carry this decree into effect.