**Union National Bank of Pittsburgh v. Perkey**

Before Weiss, *P.J.*, and Mihalich and Sculco, *JJ.*

*George L. Cass*, for plaintiff.
*William E. Stillwagon*, for claimant.

MIHALICH, *J.*, September 21, 1977 — In June, 1971, plaintiff, Union National Bank of Pittsburgh, financed the purchase of a mobile home by defendants, John D. Perkey and Theresa A. Perkey, his wife, for the sum of $8,049.24 under an installment sale contract. A first encumbrance in this amount was listed on the face of the Pennsylvania Department of Transportation Title Certificate no. A22938822 for the mobile home. The trailer was later moved to a mobile home court owned by Chris Heckman.

In or about June 1973, Fred Perkey, the cousin of John D. Perkey (one of the owners of the mobile home) entered into an oral agreement with Chris Heckman for the lease of space in the mobile home court for the subject mobile home. The terms of the oral lease, however, are the subject of contradictory testimony. Fred Perkey moved out in about June 1974.

Sometime during the summer of 1974, the mobile home was leased to the son of Myron Lee, Mr. Heckman's manager. There is no indication that this was done with the authority, permission or consent of either of the owners; and it appears that Mr. Heckman, by leasing the space and the unoc-

cupied mobile home to Myron Lee's son, appropriated said mobile home to his own use during the summer of 1974. Mr. Heckman claims rentals due in the amount of $1,800 for the period from October 1974 to August 1975.

Because of the delinquencies and arrearages in the payment of the installment obligations owned to the bank by the owners, the bank entered suit against them in the Court of Common Pleas of Westmoreland County, Pa., and, on June 6, 1974, judgment by default for failure to file an answer was entered in the amount of $4,022.42.

On July 15, 1975, the mobile home was seized by the Sheriff of Westmoreland County, Pa., pursuant to a writ of execution obtained at execution no. 2410 of 1977 by the bank. The mobile home was sold by the sheriff for the sum of $1,801, and a schedule of distribution was filed in which the sheriff allocated $52 from the proceeds to the sheriff's office and the balance, $1,748 to Heckman as "Landlord's preference."

Plaintiff, the bank, filed exceptions to the sheriff's schedule of distribution, and by order of court dated November 5, 1975, James R. Silvis, Esq., was appointed to hold a hearing concerning the exceptions and to make recommendations as to findings of fact and conclusions of law to the court. Hearing was held and a report submitted wherein the master recommended the "Landlord's preference" be denied and that the net proceeds be paid to the bank. The claimant, Heckman, then filed exceptions to the master's report opposing the recommended distribution of the proceeds to the bank. It is upon the claimant's exceptions that this case comes before this court for consideration.

The narrow issue for consideration by this court is whether the landlord (Heckman), who had not dis-

trained upon the goods of the tenant (Perkeys) prior to levy by the bank, is entitled to a preference in the disposition of proceeds from the sale of tenant's goods.

The bank held a valid first encumbrance on the mobile home created by the installment sale contract on June 9, 1971, and noted upon the title to the mobile home. Further, the bank had reduced its claim against the owners of the mobile home to a judgment and had obtained a writ of execution on that judgment and had the sheriff seize the mobile home on July 15, 1975.

Heckman does not claim that he attached or distrained upon the mobile home. Heckman contends that the master erred in his application of the law in failing to recognize that under the Landlord and Tenant Act of June 16, 1836, P.L. 755, sec. 83, as amended April 6, 1951, P.L. 69, 68 P.S §321, a landlord is entitled to a preference for rents outstanding. Section 321 of the act provides:

"Section 321. Landlord's preference in proceeds of execution

"The goods and chattels being in or upon any messuage, lands, or tenements, which are or shall be demised for life or years, or otherwise taken by virtue of an execution, and *liable to the distress* of the landlord, shall be liable for payment of any sums of money due for rent at the time of taking such goods in execution: *Provided, That such rent shall not exceed one year's rent.*" Act of June 16, 1836, P.L. 755, sec. 83. (Emphasis supplied.)

At common law, a landlord could distrain upon any goods found on the premises at the time of the taking, but he had no lien on them until he made his right active by seizure. The Landlord and Tenant Act, supra, similarly does not confer a lien until the

right of distress has been actually exercised: 68 P.S. §§321, 322. Thus, the landlord's right to distress on goods for rent is a right in the nature of a lien, rather than a lien, until the goods are actually distressed under a landlord's warrant: Shalet v. Klauder, 34 F. 2d 594 (3d Cir. 1929); Sum. Pa. Jur., Landlord and Tenant, §176.

Heckman failed to distrain upon the mobile home prior to the execution sale, consequently, he does not have a distraint lien on the mobile home or its proceeds. We must not confuse, however, a landlord's right to recover his rental claim in full upon distraint and a landlord's right to a *preference for one year's rental* upon a creditor's execution sale of tenant's goods. This one-year rental preference is provided under the act, notwithstanding the landlord's failure to distrain. Section 302 of the act provides that the goods of the tenant taken by virtue of an execution, and *liable to the distress of the landlord*, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution, *provided, that such rent shall not exceed one year's rent.*

The issue here was considered by the court in Shalet v. Klauder, 34 F. 2d 594 (3d Cir. 1929), stating at page 595:

"Admittedly the landlord had not distrained on the goods when the levy of the sheriff was made. After that it was too late to distrain, but the landlord was not left without remedy. He could have given notice to the sheriff of his claim for rent for one year, and his right to distrain would thereby have become a lien. But without such notice a landlord loses his priority, for the mere contracts of lease and the unexercised right to distrain do not create a secret lien upon the property found on the premises. The

landlord must not only give notice in order to impress the property with a lien, but he must do so with diligence."

In Moss's Appeal, 35 Pa. 162 (1860), the Pennsylvania Supreme Court held that the Act of 1836 conferred upon the landlord a preference as to goods and that a distraint need not be made to preserve such preference, stating at page 166:

"I concur entirely with the ruling of the point in question in Bromley v. Hopewell, 2 Harris 402, and with the remark of the learned judge who delivered the opinion that the words 'liable to the distress of the landlord,' had for their object the exemption from liability to satisfy rent, such goods as are commonly exempted from distress, but we cannot agree that this is the only effect of these words. They are not words of mere restriction, but of definition rather. Undoubtedly, the landlord cannot claim the proceeds of goods that he could not have distrained; but what right have we to say, in the face of the statute, that he may not claim the proceeds of goods that were liable to his distress? No reasoning, that we have met in reported cases, would seem to justify so narrow a construction of a remedial statute.

"It follows, from our reading of these Acts of Assembly, that Davis and wife might have distrained these goods, though their lease was ended three years before, and therefore that they were entitled to claim out of the proceeds half a year's rent due and in arrear, and accordingly the decree of the court is affirmed."

By virtue of this statutory provision, 68 P.S. §321, notwithstanding that an execution by another has prevented the landlord from distraining, his right to

distrain may become a lien after the levy, by giving notice to the sheriff. While there is some difference of opinion in the Pennsylvania cases as to whether the notice should be given before the return of the execution (Mitchell v. Stewart, 13 S. & R. 295 (1825)), or before the sale is made (Wadas v. Sharp, 27 Pa. Superior Ct. 233 (1905)), it is generally accepted that the notice must be given before the money resulting from the sale leaves the sheriff's hands: Ege v. Ege, 5 Watts 134 (1836). This statute affords the landlord a limited protection where he has not made distraint and the goods of his tenant upon the leased premises have been taken by a sheriff on execution. The tenant can secure payment of his claim for rent by notifying the sheriff of his claim and looking to the proceeds of sale: Sookiasian v. Swift & Co., 100 Pa. Superior Ct. 69 (1930); Sum. Pa. Jur. Landlord and Tenant, §178.

A landlord is entitled to distrain upon all goods on the leased premises not exempt by statute (Reinhart v. Gerhardt, 152 Pa. Superior Ct. 229, 231, 31 A. 2d 737, 738 (1943); Frazee v. Morris, 155 Pa. Superior Ct. 320, 321, 38 A. 2d 526 (1944)), and there is no statute governing the situation except the Landlord and Tenant Act, supra. The Uniform Commercial Code has no application.

"[B]efore the Uniform Commercial Code, a landlord's lien was given superiority over other liens by Pennsylvania Statute and case-law. The Uniform Commercial Code does not apply to a landlord's lien, and, therefore, we conclude does not change existing Pennsylvania Law." In re Einhorn Bros., Inc., 272 F. 2d 434 (3d Cir. 1969); U.C.C. §9-104(b), Act of April 6, 1953, P.L. 3, as amended, 12A P.S. §9-104(b).

Absent a landlord's waiver of his right under the act, the bank is subject to the statutory preference for one year's rental provided in the act. Section 321 of the act provides for a preference for any sums due for rent at the time of taking such goods in execution, provided, that such rent shall not exceed one year's rent. In August of 1974, Heckman had appropriated the mobile home to his own use and installed his employe's son in the mobile home. Consequently, any claim for moneys due during the period August 1974, to July 15, 1975, the time of execution, cannot be considered rental due under the provisions of the act. Heckman is limited in his rental preference to Fred Perkey's occupancy of the premises, a period of one year at $50 per month for a total of $600. This amount is in conformity with the findings of the matter, and from which must be deducted the sums of $130 in rental payment made by Fred Perkey and $85 in rental payments made by Mr. Lee for a maximum net preference of $385.

For the above-mentioned reason, the court enters the following

## ORDER OF COURT

And now, September 21, 1977, it is hereby ordered, adjudged and decreed that the Sheriff of Westmoreland County pay the proceeds from the sale of the mobile home as follows: Sheriff Com., $20; Sheriff, $33; James R. Silvis, Master's fee, $300; James R. Silvis, reimbursement for court reporter, $71.70; Chris Heckman, landlord's preference, $385, and the balance of $991.30 to Union National Bank of Pittsburgh.